STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ERIN A. CORNELL (CABN 227135)
MARJA-LIISA OVERBECK (CABN 261707)
KEVIN R. RUBINO (CABN 255677)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7124
    FAX: (415) 436-7234
    erin.cornell@usdoj.gov
    mari.overbeck@usdoj.gov
    kevin.rubino@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID CERVANTES, aka "DC," et al.,<br><br>    Defendant. | CASE NO. CR 21-00328 YGR<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH WRITS OF HABEAS CORPUS AD PROSEQUENDUM** |

**TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 1

III. ARGUMENT ......................................................................................................................... 2

  A.  Defendants Lack Standing to Challenge a Writ of Habeas Corpus Ad Prosequendum. ................................................................................................. 2

  B.  There Is No Time Limit on the Operation of the Prosequendum Writ. ............... 6

IV. CONCLUSION ...................................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barnes v. Marriott Hotel Servs., Inc.*,
   No. 15-CV-01409-HRL, 2017 WL 635474 (N.D. Cal. Feb. 16, 2017) .................................. 2

*BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*,
   No. 21-MC-80189-DMR, 2021 WL 5507167 (N.D. Cal. Nov. 24, 2021) ........................... 2

*Bowman v. Wilson*,
   672 F.2d 1145 (3d Cir. 1982) ................................................................................................ 3

*Cathey v. Ives*,
   No. CIV. 11-192-GFVT, 2012 WL 1448126 (E.D. Ky. Apr. 26, 2012) ............................. 6

*Chunn v. Clark*,
   451 F.2d 1005 (5th Cir. 1971) ............................................................................................... 3

*Derengowski v. U.S. Marshal, Minneapolis Off., Minn. Div.*,
   377 F.2d 223 (8th Cir. 1967) ............................................................................................. 3, 5

*Diaz-Fontanez v. Daniels*,
   13-CV-02531-CMA-KLM, 2014 WL 1660482 (D. Colo. Apr. 25, 2014) ......................... 6

*Falcon v. Bureau of Prisons*,
   852 F. Supp. 1413 (S.D. Ill. 1994) ....................................................................................... 4

*Hampton v. United States*,
   No. 2:00CR94-P, 2007 WL 4554056 (N.D. Miss. Dec. 19, 2007) ....................................... 6

*Huffman v. Perez*,
   230 F.3d 1358 (6th Cir. 2000) ............................................................................................... 6

*Johnson v. Gill*,
   883 F. 3d 756 (9th Cir. 2018) ............................................................................................... 5

*Longshore v. Mason Cty.*,
   No. 318CV05069RJBJRC, 2018 WL 3432834 (W.D. Wash. June 13, 2018) ...................... 4

*Martinez v. Lothrop*,
   No. CV-19-05811-PHX-JAT, 2021 WL 1422822 (D. Ariz. Apr. 15, 2021) ........................ 6

*Miller v. United States*,
   826 F. Supp. 636 (N.D.N.Y. 1993) ....................................................................................... 6

*Moody v. Holman CF*,
   887 F.3d 1281 (11th Cir. 2018) ............................................................................................ 3

*Poland v. Stewart*,
   117 F.3d 1094 (9th Cir. 1997) ............................................................................................. 3

*Ponzi v. Fessenden*,
   258 U.S. 254 (1922) ............................................................................................................. 3

*Taylor v. Reno*,
   164 F.3d 440 (9th Cir. 1998) ............................................................................................... 2

*Thomas v. Brewer*,
   923 F.2d 1361 (9th Cir. 1991) ........................................................................................ 2, 5

*United States ex rel. Moses v. Kipp*,
   232 F.2d 147 (7th Cir. 1956) ............................................................................................... 3

*United States v. Bylund*,
   2021 WL 2269459 (D. Alaska June 3, 2021) ..................................................................... 5

*United States v. Echeverri*,
   No. 91-CR-885 (DRH), 1992 WL 81876 (E.D.N.Y. Mar. 31, 1992) .................................. 4

*United States v. Harden*,
   45 F. App'x 237 (4th Cir. 2002) .......................................................................................... 3

*United States v. Irwin*,
   612 F.2d 1182 (9th Cir. 1980) ............................................................................................. 5

*United States v. Lucas,*
   873 F.2d 1279 (9th Cir. 1989) ............................................................................................. 4

*United States v. Mauro*,
   436 U.S. 340 (1978) ............................................................................................................. 6

*United States v. Mayo*,
   646 F.2d 369 (9th Cir. 1981) ............................................................................................... 4

*United States v. Pashuta*,
   No. 2:14-CR-00038, 2014 WL 2770048 (W.D. Pa. June 18, 2014) .................................... 5

*United States v. Perea-Rey*,
   680 F.3d 1179 (9th Cir. 2012) ............................................................................................. 2

*United States v. Tancil*,
   817 F. App'x 234 (7th Cir. 2020) ........................................................................................ 6

*United States v. Warren*,
   610 F.2d 680 (9th Cir. 1980) ............................................................................................... 2

**RULES**

Fed. R. Evid. 201(b) .................................................................................................................... 2

## I. INTRODUCTION

The 15 defendants currently housed at the federal penitentiary at Atwater have moved to quash the writs of habeas corpus ad prosequendum by which they were transferred from state prison. ECF Nos. 198 (Mot.), 205. By this motion, the defendants seek "immediate return to state custody" (*id.* at 1) where, the Indictment alleges, they sit atop a sprawling statewide prison gang. The defendants' motion fails at the outset for one fatal and dispositive reason: they have no standing to bring it. The sharing of a prisoner by state and federal authorities is purely a matter of comity between the two sovereigns. For this reason, a state prisoner charged with a federal crime cannot challenge his transfer to federal custody on a writ of habeas corpus ad prosequendum. The Supreme Court decided this issue a century ago, and it has been followed by an unbroken line of cases ever since.

Even if the defendants had standing to bring this motion, it would fail on the merits. There is no requirement that the defendants be returned to state custody while their federal charges are pending. Prisoners are routinely kept in federal custody on a prosequendum writ until their federal charges are resolved, a process that sometimes takes years. The defendants' motion does not cite a single authority that has ever called this practice into question. This and the defendants' other arguments challenging the use of the prosequendum writ in this case are meritless and unsupported by any authority. Their motion should be denied.

## II. BACKGROUND

There are 22 defendants in this case, 15 of whom are being held at the United States Penitentiary at Atwater. Fourteen of those defendants were serving sentences in California state prisons when they were indicted in this case.[1] The defendants' motion states that they were all being held at the California State Prison at Solano (Mot. at 1:6–9, 3:1–3), but they were in fact being held at multiple state facilities, including California State Prison in Sacramento, Pleasant Valley State Prison in Fresno County, and Salinas Valley State Prison in Monterey County. Most of those facilities are just as far from the Oakland courthouse as Atwater, and one of those facilities is even farther. Atwater is about 121 road miles from this Court at 1301 Clay Street in Oakland. The same measure for California State Prison in

---

[1] The fifteenth defendant, Eric Zarate, was in custody at Santa Clara County Mail Jail.

OPP. TO MOTION TO QUASH WRITS           1
CR 21-00328 YGR

Solano is 50 miles, for California State Prison in Sacramento is 105 miles, for Salinas Valley State Prison in Monterey County is 122 miles, and for Pleasant Valley State Prison in Fresno County is 190 miles.[2]

All 15 of these defendants are alleged members of La Nuestra Familia, a prison gang that operates out of state custodial facilities throughout California. They were transferred from state to federal custody on September 15, 2021, pursuant to federal writs of habeas corpus ad prosequendum signed by the Honorable Magistrate Judge Virginia DeMarchi. All 15 defendants now wish to return to their state penal institutions to resume their activities there. The defendants are trying to achieve this through two motions. This motion seeks to quash the prosequendum writs by which they were transferred from state to federal custody. The other motion, filed on the same day, challenges the conditions of their confinement at Atwater. ECF No. 197.

## III.  ARGUMENT

### A.  Defendants Lack Standing to Challenge a Writ of Habeas Corpus Ad Prosequendum.

If a defendant is charged with committing a crime against two sovereigns—whether two states or a state and the United States—the sovereign that first arrested him has priority of jurisdiction for purposes of trial, sentencing, and incarceration. *Taylor v. Reno*, 164 F.3d 440, 444 n.1 (9th Cir. 1998) ("The term 'primary jurisdiction' . . . refers to the determination of priority of custody and service of sentence between state and federal sovereigns."); *United States v. Warren*, 610 F.2d 680, 684–85 & n.9 (9th Cir. 1980). This doctrine of "primary jurisdiction" derives from the fact that the federal writ of habeas corpus ad prosequendum merely "loans" the prisoner to federal authorities. *See Thomas v. Brewer*, 923 F.2d 1361, 1367 (9th Cir. 1991). Because a prisoner transfer pursuant to such a writ is

---

[2] The government requests that the Court take judicial notice of these distances, which were obtained using Google Maps. "Courts have taken notice of Google Maps for the purpose of determining distances and geography." *Barnes v. Marriott Hotel Servs., Inc.*, No. 15-CV-01409-HRL, 2017 WL 635474, at *4 (N.D. Cal. Feb. 16, 2017) (citing *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) ("We take judicial notice of a Google map and satellite image as a "source[ ] whose accuracy cannot reasonably be questioned," at least for the purpose of determining [a] general location" (quoting Fed. R. Evid. 201(b)); *see also BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, No. 21-MC-80189-DMR, 2021 WL 5507167, at *3 n.2 (N.D. Cal. Nov. 24, 2021) (taking judicial notice of the geographical distance between addresses listed on a subpoena).

OPP. TO MOTION TO QUASH WRITS
CR 21-00328 YGR                                       2

purely a matter of comity between two sovereigns, it is well-settled that the prisoner being transferred has no basis to object. *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922) ("[A prisoner] may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it."); *Poland v. Stewart*, 117 F.3d 1094, 1098 (9th Cir. 1997) ("[A]s pointed out by the Supreme Court in [*Ponzi*] the arrangement made between the two sovereigns, the state and federal governments, does not concern the defendant who has violated the laws of each sovereignty and he cannot in his own right demand priority for the judgment of either."); *United States v. Harden*, 45 F. App'x 237, 239 (4th Cir. 2002) ("[P]risoners have no standing to challenge transfers between sovereigns or to challenge the issuance of a writ of habeas corpus ad prosequendum."); *Bowman v. Wilson*, 672 F.2d 1145, 1154 (3d Cir. 1982) (holding "[t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner."); *Chunn v. Clark*, 451 F.2d 1005, 1006 (5th Cir. 1971) ("It is well-established that a prisoner has no standing to contest an agreement between two sovereigns concerning the temporary exchange of custody of the prisoner on a writ of habeas corpus ad prosequendum, or their agreement as to the order of his prosecution and execution of sentences."); *Derengowski v. U.S. Marshal, Minneapolis Off., Minn. Div.*, 377 F.2d 223, 223 (8th Cir. 1967) ("It is a well-established legal rule that a state prisoner is without standing to contest a federal court's issuance of a writ of habeas corpus ad prosequendum."); *United States ex rel. Moses v. Kipp*, 232 F.2d 147, 150 (7th Cir. 1956).[3]

The defendants try to circumvent this long line of federal authority by claiming that their transfer into federal custody "interferes with [their] Sixth Amendment rights to counsel and due process." Mot. at 3. Specifically, they claim that the use of the prosequendum writs in this case has interfered with their Sixth Amendment right to counsel by "increasing the distance between the defendants and the court." Mot. at 3:1–8. As an initial matter, this characterization is based on the false premise that all the

---

[3] Some courts have said that this is better understood as "lack of a cause of action," rather than an issue of "standing." *See, e.g.*, *Moody v. Holman CF*, 887 F.3d 1281, 1286 (11th Cir. 2018) ("The reference in our earlier cases to lack of standing is therefore best seen as shorthand for holding that the prisoners in question, as a matter of substantive law, did not have a claim that would entitle them to habeas relief."). But however the issue is framed, the conclusion is the same: a prisoner does not have a legal basis to challenge his transfer from the custody of one sovereign to another.

OPP. TO MOTION TO QUASH WRITS        3
CR 21-00328 YGR

prisoners were previously housed at the state facility at Solano. *See* Mot. at 1:6–9, 3:1–3. In truth, as noted above, most of the defendants are now either closer to the courthouse or the same distance as before.

But even if the defendants' claim were factually accurate, it would be legally baseless. To state a claim on this basis, the defendants would have to show that their access to counsel has been materially prejudiced. *United States v. Mayo*, 646 F.2d 369, 373 (9th Cir. 1981); *States v. Lucas,* 873 F.2d 1279 (9th Cir. 1989). The defendants have not made such a showing, either in this motion or their motion challenging the conditions of their confinement. Merely asserting that they are now being housed farther from the courthouse, or that their lawyers have been inconvenienced, is not sufficient to state a Sixth Amendment claim. *Mayo*, 646 F.2d at 373 (rejecting argument that defendant's Sixth Amendment right to counsel was violated by his transfer from Lompoc, California to Safford, Arizona); *see also id.* (prisoner's "interests in remaining at Lompoc and retaining his living privileges do not implicate the due process clause of the fifth amendment"); *Lucas,* 873 F.2d 1279 (rejecting Sixth Amendment argument of pretrial detainee who was transferred 120 miles away from his lawyer in Tucson to a facility in Phoenix, stating: "Lucas's counsel could easily endure the inconvenience of a two-hour drive to Phoenix."); *see also Longshore v. Mason Cty.*, No. 318CV05069RJBJRC, 2018 WL 3432834, at *6 (W.D. Wash. June 13, 2018) (denying pretrial detainee's Sixth Amendment claim, stating: "Plaintiff merely alleges that he is now farther from his attorney than he was when he was in Mason County. That is not sufficient."); *Falcon v. Bureau of Prisons*, 852 F. Supp. 1413 (S.D. Ill. 1994) (finding no prejudice despite that defendant was transferred over 1,000 miles away from his lawyers in Florida to Illinois); *United States v. Echeverri*, No. 91-CR-885 (DRH), 1992 WL 81876, at *2 (E.D.N.Y. Mar. 31, 1992) ("the distance to the Otisville facility [100 miles away] may inconvenience defense counsel, but it does not deprive defendant of his right to a reasonable opportunity to consult with counsel.").

The defendants also cannot avoid the wall of authority prohibiting them from challenging the prosequendum writs by asserting that "the government used the writ not merely to transfer [them] to another District, but also to take [them] to Moffett Federal Airfield to be interviewed by federal agents, in violation of their constitutional and statutory rights." Mot. at 3:9–13. This argument is frivolous. The defendants were bussed to Moffett Federal Airfield from their various state facilities so that they

could be processed by the United States Marshal Service on the federal charges and then flown to Atwater. There was nothing abnormal or unconstitutional about attempting to interview them at the airfield: defendants are routinely interviewed in a custodial setting following their arrest. If the defendants believe their rights were violated during these interviews, they can seek an appropriate remedy. Even if there were a violation, the remedy would not be quashing the writs and returning the defendants to state custody.

The sole decision cited by the defendants in support of this argument is *United States v. Irwin*, 612 F.2d 1182 (9th Cir. 1980). Mot. at 3. But *Irwin* does not demand, or even counsel in favor of, the relief they seek. In that case, an undercover DEA agent had discussions with the defendant outside the presence of counsel in which he allegedly told the defendant to ignore the advice of attorney that he not cooperate with the government. *Id*. at 1183. That case has no application to these facts and does not support the defense's claim that their right to counsel has hindered either by their transfer to Atwater or their post-arrest interviews.

The cases cited by the defendants in support of their claim that the prosequendum writ has been misused are similarly misplaced. They are all are concerned with unrelated issues regarding the functioning of the writ. For example, in most of the cases, the prisoner was challenging the calculation of his federal sentence versus state sentence, and the court consequently needed to decide who had primary jurisdiction over the prisoner and when. *See, e.g.*, *Brewer*, 923 F.2d at 1361; *Johnson v. Gill*, 883 F. 3d 756 (9th Cir. 2018); *United States v. Bylund*, 2021 WL 2269459 (D. Alaska June 3, 2021). In none of the cases cited by the defendant—and in no case reviewed by the government—was a prisoner returned to a prior facility after challenging his transfer to the custody of a different sovereign.

That is because it is a well-established rule that a prisoner is without standing to contest a transfer pursuant to a writ of habeas corpus ad prosequendum. Courts are uniform in holding that the fact that the prisoner happens to be the subject of the transfer is not enough to confer standing—if it were, each of the numerous writs that routinely issue every day could spawn litigation that would paralyze pending proceedings. *See Derengowski*, 377 F.2d 223 at 223–24; *United States v. Pashuta*, No. 2:14-CR-00038, 2014 WL 2770048, at *2 (W.D. Pa. June 18, 2014) ("[S]ince *Ponzi*, the case law is uniform that a Defendant simply has no standing to call into question the conduct of the Executive

Branch in its cooperation with a state sovereign in managing the Defendant's pretrial attendance at state or federal proceedings."); *Hampton v. United States*, No. 2:00CR94-P, 2007 WL 4554056, at *9 (N.D. Miss. Dec. 19, 2007) ("[A] state prisoner has no standing to attack the issuance and operation of a federal writ of habeas corpus ad prosequendum."). The defendants' attempt to overcome this rule by framing the transfer as a violation of their Sixth and/or Fifth Amendment rights is neither factually nor legally supported. Their motion should be denied.

### B. There Is No Time Limit on the Operation of the Prosequendum Writ.

The defendants also argue that the government has misused the prosequendum writ by not returning them to state custody after they were arraigned. Mot. at 2:16–17 ("Such federal pretrial detention exceeds the limited scope of the writ of habeas corpus *ad prosequendum*."). Even setting aside the fact that, as explained above, the defendants have no standing to raise such a challenge, they have identified no authority that requires the federal government to return a prisoner to state custody between court appearances, nor have they cited any authority that places a limit on the length of time that a prisoner can be held in federal custody on a prosequendum writ.

The defendants have cited cases in which a writ was issued to secure the defendant's "immediate presence" on a "certain day," (*see* Mot. at 2 (citing *United States v. Mauro*, 436 U.S. 340, 341, 362 (1978)), but none of those cases ruled (or even suggested) that the writ can *only* be used in this manner. On the contrary, there are numerous cases in which defendants were transferred into federal custody on a prosequendum writ for their arraignment and then kept in federal custody continuously until their charges were resolved and a sentence imposed—a process that in some cases took years. *See, e.g.*, *Miller v. United States*, 826 F. Supp. 636, 638 (N.D.N.Y. 1993) (defendant held in federal custody on prosequendum writ for two years); *Diaz-Fontanez v. Daniels*, No. 13-CV-02531-CMA-KLM, 2014 WL 1660482, at *1 (D. Colo. Apr. 25, 2014) (defendant held in federal custody on prosequendum writ for over five years); *United States v. Tancil*, 817 F. App'x 234, 236 (7th Cir. 2020) (defendant held in federal custody on prosequendum writ for over five years); *Cathey v. Ives*, No. CIV. 11-192-GFVT, 2012 WL 1448126, at *1 (E.D. Ky. Apr. 26, 2012) (defendant held in federal custody on prosequendum writ for over a year); *Martinez v. Lothrop*, No. CV-19-05811-PHX-JAT, 2021 WL 1422822, at *1 (D. Ariz. Apr. 15, 2021) (defendant held in federal custody on prosequendum writ for 18 months); *Huffman*

*v. Perez*, 230 F.3d 1358 (6th Cir. 2000) (defendant held in federal custody on prosequendum writ for two years). There is simply no basis in the law to support the defendants' timeliness argument, even were the Court to reach it, which it need not do.

**IV.   CONCLUSION**

For all these reasons, the defendants' motion to quash the prosequendum writs by which they were transferred to federal custody should be denied.

DATED: January 31, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

 /s/
ERIN A. CORNELL
MARJA-LIISA OVERBECK
KEVIN R. RUBINO
Assistant United States Attorney