1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  ERIN A. CORNELL (CABN 227135)
   MARJA-LIISA OVERBECK (CABN 261707)
5  KEVIN R. RUBINO (CABN 255677)
   Assistant United States Attorneys
6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-7124
8       FAX: (415) 436-7234
        erin.cornell@usdoj.gov
9       mari.overbeck@usdoj.gov
        kevin.rubino@usdoj.gov
10
   Attorneys for United States of America
11

12                 UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                       OAKLAND DIVISION

15  UNITED STATES OF AMERICA,           )  CASE NO. CR 21-00328 YGR
                                        )
16         Plaintiff,                   )  **GOVERNMENT'S SURREPLY REGARDING**
                                        )  **MOTION FOR MODIFICATION OF**
17      v.                              )  **CONDITIONS OF PRETRIAL DETENTION**
                                        )
18  DAVID CERVANTES, aka "DC," et al.,  )
                                        )
19         Defendants.                  )
                                        )
20  _____ )

21

22

23

24

25

26

27

28

1

2

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

    A.    The Court Lacks Jurisdiction Over Most of the Defendants' Conditions of Confinement. ......................................................................................... 2

    B.    The Restrictions on the Defendants' Housing Are Not Punishment. ............... 2

        1.    Confinement to Single Occupancy Cells Does Not Violate the Defendants' Rights or Interfere with Right to Counsel. ........................... 2

        2.    Atwater's Geographic Distance from the Oakland Courthouse Does Not Violate the Defendants' Sixth Amendment Rights. ................................. 5

        3.    Atwater's Bed Check Policy Is Not an Unconstitutional Interference with Defendants' Right to Counsel. ...................................................... 6

        4.    Atwater's Shackling Practices Are Not an Unconstitutional Interference with Defendants' Right to Counsel. .................................... 7

    C.    The Remainder of the Defendants' Complaints Do Not Amount to an Unconstitutional Interference with Their Right to Counsel. .......................... 8

    D.    An Evidentiary Hearing is Not Warranted. ................................................ 8

    E.    The Arrangements Described in the Government's Opposition are Not New. .... 9

III.  CONCLUSION ................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bell v. Wolfish*,
411 U.S. 520 (1979) ...................................................................................................passim

*Brown v. Tromba*,
2019 WL 3294803 (D. Nev. Feb. 7, 2019) ...........................................................................4

*Casey v. Lewis*,
4 F.3d 1516 (9th Cir. 1993) .............................................................................................7, 8

*Deadmon v. Grannis*,
2008 WL 595883 (S.D. Cal. 2008) ........................................................................................4

*Garcia v. Hasley*,
2017 WL 1381649 (C.D. Cal. 2017) ......................................................................................4

*Harper v. Wallingford*,
877 F.2d 728 (9th Cir.1989) ...................................................................................................8

*Lopez v. Skagit Cty. Jail*,
447 F. App'x 807 (9th Cir. 2011) ...........................................................................................4

*Miramontes v. Chief of Dept. of Corrections*,
86 F. App'x 325 (9th Cir. 2004) .............................................................................................3

*Norbert v. San Francisco Sheriff's Dep't*,
2020 WL 8675997 (N.D. Cal. 2020) ...................................................................................4, 5

*Spain v. Procunier*,
600 F.2d 189 (9th Cir. 1979) ..............................................................................................4, 5

*Thornburgh v. Abbott*,
490 U.S. 401 (1989) ................................................................................................................8

*Turner v. Safley*,
482 U.S. 78 (1987) ..................................................................................................................6

*United States v. Barclay*,
442 F.Supp.3d 1312 (D. Idaho 2020) ....................................................................................6

*United States v. Lopez*,
327 F.Supp.2d 138 (D.P.R. 2004) .........................................................................................3

*United States v. Lucas*,
873 F.2d 1279 (9th Cir. 1989) ...............................................................................................6

*United States v. Luong*,
   2009 WL 2852111 (E.D. Cal. 2009) ................................................................................2, 4

*United States v. Pedersen*,
   2013 WL 3187208 (D. Or. 2013) ....................................................................................7, 8

*Upshaw v. Alameda County*,
   377 F.Supp.3d 1027 (N.D. Cal. 2019) ................................................................................7

**<u>Statutes</u>**

42 U.S.C. § 1983 ..............................................................................................................2, 8

## I.        INTRODUCTION

This is not the appropriate procedure for the defendants to challenge the conditions of their pretrial detention, which should be considered, if at all, in a civil lawsuit naming the prison.  In the context of this criminal proceeding, the Court's review is limited to questions bearing on the defendants' access to counsel and trial rights.  Even if every aspect of the defendants' claims is credited, their complaints do not rise to the level of constitutional violations.  The defendants are all housed well within reasonable driving distance of their counsel, consistent with Ninth Circuit law, allowing them to schedule regular in-person visits.  In between those visits, the defendants have access to phone calls and videoconference meetings with their counsel.  They also have several means for reviewing paper and electronic discovery, most of which they have failed to utilize.  The authorities cited in the government's Opposition (Opp'n) make clear that these conditions do not impede the defendants' access to counsel or trial rights.  Yet the defendants have pointedly failed to grapple with this case law in Reply.

As for the other conditions of the defendants' confinement, they also would not give rise to a constitutional violation, should that issue ever be properly raised for judicial review in some future proceeding.  The decision as to where and how to house the defendants was made after careful consideration of numerous factors, including the defendants' documented history of violent crime, including violent crime hatched from behind prison walls.  Given the demonstrable danger posed by these defendants, the restrictions imposed on their movement and communications is easily justified as a necessary precaution for the security of the facility, its staff, and the defendants' fellow inmates.  Here, too, the case law is clear.  Pretrial detainees held in far more restrictive conditions for far longer periods of time have failed to identify a constitutional violation.  Although there are extreme circumstances where a housing restriction can give rise to a constitutional violation, no such circumstances are at issue in this case.  Short of that, the Court should defer to the significant experience and superior expertise of the United States Marshal (USMS) and the Bureau of Prisons (BOP) in making these housing determinations, as the Supreme Court has instructed.  For all these reasons, the motion should be denied.

## II.    ARGUMENT

### A.    The Court Lacks Jurisdiction Over Most of the Defendants' Conditions of Confinement.

In its Opposition, the government explained that federal courts in a criminal case generally lack jurisdiction to consider the conditions of a defendant's pretrial confinement.  Opp'n at 4-5.  The sole exception is where those "affect [a defendant's] ability to consult with counsel or exercise other trial rights." *Id*.; citing, inter alia, *United States v. Luong*, 2009 WL 2852111, *1 (E.D. Cal. 2009). Otherwise, such challenges must be raised in a civil action brought under 42 U.S.C. § 1983.  *Id*.

Contrary to defendants' assertions, while the Due Process Clause of the Fifth Amendment does protect pretrial detainees' due process rights (*Bell v. Wolfish*, 411 U.S. 520, 545-546, 554 (1979); Opp'n at 9), it does not establish this Court's jurisdiction, in this criminal action, where the conditions do not affect the defendants' ability to consult with counsel or exercise other trial rights.  The defendants cite *Wolfish* in support of their argument on this point, but *Wolfish* was a civil class action lawsuit (decided before passage of 42 U.S.C. § 1983), and it said nothing about considering the conditions of confinement in a criminal proceeding.  *Id*.

Accordingly, most of the defendants' complaints, including their placement in administrative segregation, are not properly before this Court.  *See also* Opp'n at pp. 4-5.  In any event, all their complaints fail to rise to the level of constitutional violations.

### B.    The Restrictions on the Defendants' Housing Are Not Punishment.

#### 1.    Confinement to Single Occupancy Cells Does Not Violate the Defendants' Rights or Interfere with Right to Counsel.

The parties agree that the defendants' housing status, which they refer to as "administrative segregation," is only a violation of their due process rights if it constitutes "punishment."  Defendants' Motion (Mot.) (Dkt. 197) at 5-6; Opp'n at 17; Defendants' Reply (Dkt. 232) at 1-2.  The defendants also agree that, provided a condition or restriction is "reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."  Mot. at 6 (citing *Bell v. Wolfish*, 441 U.S. at 539).  Unable to dispute this lenient standard for judicial review of prison conditions, the defendants' argument is that the restrictions on their housing *must* be punishment because there is no other

1  explanation.  Reply at 1-2.  In reality, the history and characteristics of these defendants easily renders

2  them worthy of this restricted housing status.

3      Nearly all the 15 defendants who have brought this motion are convicted murderers.  All of them

4  have been charged with conspiring, from behind prison walls, to promote an enterprise that has

5  repeatedly committed murder or attempted murder, among other crimes.  For example, in the wiretap

6  evidence already produced in discovery, many of the defendants can be heard using smuggled cellphones

7  inside prison to discuss the daily operations of La Nuestra Familia (NF), as well as the "removal" of NF

8  members and associates through violent attacks and attempted murder.  Given this history, the conditions

9  at USP Atwater are undeniably rationally related to a legitimate governmental purpose.  The contention

10  that there is no explanation except punishment for the defendants' housing restrictions is absurd.

11      The defendants cite one case in support of their position that the government must provide more

12  evidence to justify these housing restrictions, *United States v. Lopez*, 327 F.Supp.2d 138 (D.P.R. 2004).

13  Reply at 2.  That case does not support their position.  In *Lopez*, a federal prison facility in Puerto Rico

14  had a policy that, once it learns the government is seeking the death penalty against a pretrial detainee,

15  the detainee is immediately and permanently placed in administrative detention in the special housing

16  unit.  *Id*. at 140, 143.  Because no other factors are taken into consideration, the court struck down this

17  policy, finding that it was untethered to any stated security need.  *Id*. at 143.

18      *Lopez* is nothing like this case.  USP Atwater is not reflexively categorizing defendants as high

19  risk based on a sole criterion, much less a sole criterion without a direct connection to the defendants'

20  conduct while in prison.  USP Atwater has taken all relevant aspects of the defendants' history and

21  characteristics into account, including their criminal history, performance in prison, gang affiliation, and

22  the pending charges, and has evaluated those factors in light of the security needs of the prison.

23  Declaration of Armando Briceño (Briceño Decl.) (Dkt. 214-2) ¶ 7.  Nothing about this process is

24  automatic or permanent, and it is directly tied to prison security.

25      The government's showing is more than adequate.  The government has cited several cases,

26  including two unpublished decisions from the Ninth Circuit, holding that, "absent a showing of an

27  express intent to punish," a pretrial detainee is not even entitled to a hearing before he is placed in

28  administrative segregation.  *Miramontes v. Chief of Dept. of Corrections*, 86 F. App'x 325 (9th Cir.

SURREPLY RE CONDITIONS OF CONFINEMENT   3
CR 21-00328 YGR

2004); *Lopez v. Skagit Cty. Jail*, 447 F. App'x 807, 808 (9th Cir. 2011); *Brown v. Tromba*, 2019 WL 3294803 (D. Nev. Feb. 7, 2019) ("Courts have uniformly held that placement in administrative segregation for non-punitive reasons does not give rise to a liberty interest under the Due Process Clause."). In *Miramontes*, for example, the Ninth Circuit held that the prison's reliance on the defendant's "criminal background, confinement history, and gang affiliation" was a sufficient, non-punitive basis for his placement in administrative segregation. *Id*. at *1. None of those cases, and no case cited by the defendants, say that a "particularized" evidentiary showing is necessary. Reply at 2. On the contrary, the prison is entitled to "wide-ranging deference" from the courts when coming to a decision about housing restrictions for pretrial detainees. *Wolfish*, 441 U.S. at 547. The determination in this case easily falls within that wide-ranging discretion.

Notably, the defendants acknowledge that the government has cited "a number of cases in which courts have upheld similarly restrictive conditions of pretrial detention." Reply at 3. But they claim all those cases are distinguishable because they were decided against the background presumption that pretrial detention will be short, whereas the defendants here may be detained for years. *Id*. First of all, pretrial detention is frequently lengthy, as the courts are well aware. *See, e.g., Norbert v. San Francisco Sheriff's Dep't*, 2020 WL 8675997, *22 (N.D. Cal. 2020) ("[B]ecause of the increasing complexity of criminal trials, the time between arrest and trial can be years."). And nothing in the cases cited by the government suggests that the court's analysis turned on the length of the pretrial detention. In fact, the government cited two cases in which courts found that no due process violation arose when defendants were held in solitary confinement for over a year. Opp'n at 17 n. 11 (citing *Garcia v. Hasley*, 2017 WL 1381649 (C.D. Cal. 2017); *Deadmon v. Grannis*, 2008 WL 595883 (S.D. Cal. 2008).

The defendants cited two cases in which courts found that confining a pretrial detainee to solitary confinement for *more than four years* constituted "punishment" and violated their constitutional rights. Reply at 3; *Norbert*, 2020 WL 8675997, *22; *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). First of all, those cases are plainly inapplicable because the defendants in this case have been in restricted housing for closer to four months than four years. As of the date of the hearing on this motion, the defendants will have been housed at USP Atwater for just shy of six months. But it is not just the length of confinement that was critically different in those cases, it was also the conditions.

In *Spain v. Procunier*, many of the prisoners raising claims had received no access to outdoor exercise for several years*,* and in *Norbert*, many of the prisoners had received no exposure to sunlight for just as long. *Spain*, 600 F.2d at 199 ("The trial court found that for recreation the plaintiffs were permitted to exercise one at a time in a corridor fronting on eight or nine cells. . . . Inmates on the first floor of the AC were never permitted any outdoor exercise or recreation."); *Norbert*, 2020 WL 8675997 ("Inmates at County Jails 4 and 5 have no access to direct sunlight or outdoor recreation during their time incarcerated at those facilities."). Both courts in those cases went on at length about the importance of access to sunlight and outdoor exercise, including by citing medical research. *Spain*, 600 F.2d at 199–200; *Norbert*, 2020 WL 8675997, at *18, 22. There is no such issue in this case. It is undisputed that the 15 defendants bringing this motion have daily access to an hour of outdoor exercise and sunlight. Briceño Decl. ¶ 8; Declaration of John Paul Reichmuth (Reichmuth Decl.) (Dkt. 197-1) ¶ 6; Declaration of Miranda Kane (Dkt. 197-1) ¶ 6. Both *Norbert* and *Spain* found that even less outdoor exercise time would be constitutionally adequate. *Spain*, 600 F.2d at 199–200 (ordering prison to provide one hour a day, five days a week, of exercise); *Norbert*, 2020 WL 8675997, at *18, 22 (holding that one hour a day, seven days a week, or indoor exercise was constitutionally adequate). Thus, these cases do not help the defendants, and would not help them even if they had been confined under their current conditions for years.

Notably, in *Wolfish*, the Supreme Court stated that if a restriction is not reasonably related to a legitimate goal, a court *may* infer that the purpose is for punishment; where, as here, a "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Wolfish*, 441 U.S. at 539. The Supreme Court warned that "[c]ourts must be mindful that these inquiries spring from constitutional requirements and that judicial answer to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.*

### 2. Atwater's Geographic Distance from the Oakland Courthouse Does Not Violate the Defendants' Sixth Amendment Rights.

Faced with the same complaints that the defendants are raising in this case, the Ninth Circuit has found that a driving distance of two hours between a pretrial detainee and his or her counsel was a mere

1    "inconvenience" that counsel "could easily endure." *United States v. Lucas*, 873 F.2d 1279, 1280 (9th

2    Cir. 1989). Moreover, as discussed in the government's Opposition, multiple courts have held that

3    transfers of more than 100 miles from counsel do not interfere with a pretrial detainee's Sixth

4    Amendment rights. Opp'n at pp. 11-12. Defendants address none of these cases. They instead rely on a

5    single decision from the District of Idaho, wherein the court found that the pretrial detainee's transfer

6    from the Boise area, where his case was venued, to a facility in the Seattle/Tacoma area, which is over

7    500 road miles from Boise, was a violation of the Sixth Amendment. *United States v. Barclay*, 442

8    F.Supp.3d 1312, 1314 (D. Idaho 2020). *Barclay* is easily distinguishable.

9        First of all, the distance from counsel in that case (500 miles) was more than four times the

10    distance from the defendants and their counsel in this case (121 miles). The *Barclay* court did not even

11    find that a distance of 500 miles was enough on its own to constitute a violation of the defendants' access

12    to counsel. It was critical to the court's analysis in that case that the defendant was unable to have

13    confidential attorney-client communications by phone and mail or store discovery in his cell, in part due

14    to the nature of the charges against him (distribution of child pornography). *Id*. at 1317. On this basis,

15    the court held that the defendant's communications with counsel were being chilled and prevented him

16    from preparing for trial. *Id*.

17        Here, in addition to in-person visits, defendants can communicate with their attorneys by phone,

18    mail, and videoconference. Opp'n at pp. 13, 15; Declaration of David Lazariuk (Lazariuk Decl.) (Dkt.

19    214-3), ¶¶ 10-13. USP Atwater's location does not chill their communications with their counsel, nor

20    does it violate their Sixth Amendment rights.

21

22          **3.**      **Atwater's Bed Check Policy Is Not an Unconstitutional Interference with Defendants' Right to Counsel.**

23        USP Atwater's bed check procedure applies to all inmates confined in continuous locked down

24    status. Opp'n at 20; Briceño Decl., ¶ 11. The defendants are not being treated differently than any other

25    inmate at USP Atwater who is in the same status. Despite the widespread use of this bed check practice,

26    which is similar to the practice at Santa Rita Jail, the defendants have still failed to identify any authority

27    supporting their contention that it violates any of their rights. As noted in the government's opposition, a

28    similar policy was upheld in this district. *See Upshaw v. Alameda County*, 377 F.Supp.3d 1027, 1033-

1034 (N.D. Cal. 2019) (Donato, J.) (in a civil action by detainees held at Santa Rita jail, held that doing

cell checks every 30 minutes was reasonable and consistent with the safety standard mandated for

location detention facilities by California state regulations).

### 4.   Atwater's Shackling Practices Are Not an Unconstitutional Interference with Defendants' Right to Counsel.

The government explained in its Opposition that the defendants are shackled during in-person

attorney visits because unrestrained prisoners with the defendants' risk profile pose a risk to prison staff

and their attorneys.  Briceño Decl. ¶¶ 12-14.  The government further explained that USP Atwater had

made available two rooms where the defendants can meet with their attorneys by videoconference, free of

any restraints.  *Id.* ¶ 13.  In reply, the defendants argue that the government is only permitted to shackle

them when there has been prior a showing of misconduct during legal visits.  Reply at 2-3 (*citing United

States v. Pedersen*, 2013 WL 3187208, *4 (D. Or. 2013).  This is not the standard.  In fact, the Ninth

Circuit rejected this logic when it upheld an Arizona Department of Corrections policy prohibiting all

attorney contact visits for inmates with certain risk profiles, despite being unable to specify an incident

when such a visit resulted in violence or an attempted escape.  *See Casey v. Lewis*, 4 F.3d 1516, 1521

(9th Cir. 1993) (cited in Opp'n at 13) ("[Arizona's] failure to specify a past event wherein a contact visit

resulted in assault, escape, or hostage-taking, does not render irrational the adoption and implementation

of a non-contact policy.").  As the Ninth Circuit explained, according to its own prior precedents, and

those of the U.S. Supreme Court, it was sufficient that a prison official submitted an affidavit stating his

professional judgment that the prohibited practice "could lead to violence."  *Casey*, 4 F.3d at 1521 (citing

*Harper v. Wallingford*, 877 F.2d 728, 733 (9th Cir.1989), *Thornburgh v. Abbott*, 490 U.S. 401, 417

(1989).

The facts of the lone case the defendants cite in support of this argument are also distinguishable.

In *Pederson*, 2013 WL 3187208, the defendant had not been accused of violence or misconduct during

the period of his incarceration, unlike the defendants in this case, who are accused of taking part in a

murderous conspiracy from inside prison walls.  *Id.* at *4.  Moreover, it was undisputed in *Pedersen* that

prison officials were substantively reviewing the material the defendant brought to his legal visits, which,

1   according to the Court "casts a dark shadow over any protestations of legitimate security concerns." *Id.*

2   at *4.  There is no such accusation here.

3           C.      **The Remainder of the Defendants' Complaints Do Not Amount to an**

4                        **Unconstitutional Interference with Their Right to Counsel.**

5           The defendants' contention that the conditions at their prior institutions were more comfortable is

6   irrelevant to whether the conditions at USP Atwater are unconstitutional or punitive.  As explained in the

7   government's Opposition, the court should defer to the USMS and the BOP with regard to where and

8   how the defendants are housed pretrial.  Opp'n at pp. 5-9.  USP Atwater's decisions with regard to such

9   things as recreation time, personal telephone calls, and urine tests do not interfere with the defendants'

10  right to counsel or the exercise of any other trial right.  In *Wolfish*, the pretrial detainees similarly

11  complained of, among other things, inadequate recreational opportunities, but the Supreme Court held

12  that their rights had not been violated.  *Wolfish*, 441 U.S. at 547.  To the extent the defendants believe

13  that these conditions, or any other conditions they have raised, violate any other rights, they must bring a

14  civil action under 42 U.S.C. § 1983.

15          The defendants here present legitimate security concerns, and considerations of whether a

16  restriction or condition is reasonably related to the government's interest in maintaining security and

17  order "are peculiarly within the province and professional expertise of corrections officials …."  *Id.* at

18  540, fn 23, 548.  Where there is an absence of substantial evidence in the record showing that officials

19  exaggerated their response to these considerations, "courts should ordinarily defer to their expert

20  judgment in such matters."  *Id.*, 548; Opp'n at pp. 7-8.

21          D.      **An Evidentiary Hearing is Not Warranted.**

22          Defendants rely on the Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78 (1987), as

23  support for their request for an evidentiary hearing.  *Turner* did not involve an evidentiary hearing nor

24  did it even discuss when or whether an evidentiary hearing is warranted.  *Turner* involved a civil class

25  action lawsuit by inmates incarcerated in the Missouri Division of Corrections, who challenged the

26  constitutionality of the prison system's policies regarding (1) correspondence between inmates and (2)

27  marriage.  A trial was held, at which witnesses, including officials from the Division of Corrections,

28  testified.  The Court held that the rule barring inmate-to-inmate correspondence was reasonably related to

legitimate security interests and therefore was not unconstitutional.  The restriction on marriage, however, was found unconstitutional.  No such or even similar rules are at issue here, and the fact that witnesses testified at a civil trial does not justify a hearing here, where any supposed factual discrepancies are immaterial.

### E. The Arrangements Described in the Government's Opposition are Not New.

Contrary to defendants' suggestion, any "recent" changes were not made in response to their motion.  In fact, while the defendants' ability to speak with their counsel via video may have only come to fruition in January, counsel acknowledges that USP Atwater's intent to provide this accommodation pre-dates the defendants' motion. *See* Reichmuth Decl., ¶ 2.  Moreover, in early January, two cells were converted into electronic discovery stations and in mid-January two additional cells were converted into video teleconferencing stations.  Lazariuk Decl., ¶¶ 7, 10.  As early as mid-October, a second computer was made operation on which the defendants could review discovery. *Id.*, ¶ 6.

Regardless, it is not USP Atwater's intent to remove any of the accommodations available to the defendants, including the multiple discovery review terminals, the disability accommodations for defendants Cervantes and Perez, or the attorney video teleconference room.  Briceño Decl., ¶¶ 8, 16.  As set forth above and in the government's opposition, to the extent they even fall within this Court's jurisdiction, the defendants' conditions of confinement are reasonable and supported by the law.

## III. CONCLUSION

For all these reasons, as well as those set forth in the government's Opposition, the Motion should be denied.

DATED:  February 28, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/
ERIN A. CORNELL
MARJA-LIISA OVERBECK
KEVIN R. RUBINO
Assistant United States Attorneys

SURREPLY RE CONDITIONS OF CONFINEMENT   9
CR 21-00328 YGR