STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ERIN A. CORNELL (CABN 227135)
MARJA-LIISA OVERBECK (CABN 261707)
KEVIN R. RUBINO (CABN 255677)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7124
    FAX: (415) 436-7234
    erin.cornell@usdoj.gov
    mari.overbeck@usdoj.gov
    kevin.rubino@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 21-00328 YGR |
|     Plaintiff, | GOVERNMENT'S SURREPLY TO DEFENDANTS' MOTION TO QUASH PROSEQUENDUM WRITS |
|   v. | |
| DAVID CERVANTES, aka "DC," et al., | |
|     Defendant. | |

1    Both in their motion, and now in their reply, the defendants have failed to cite a single case in

2    any jurisdiction holding that a prisoner can quash a prosequendum writ and force his return to the

3    custody of another sovereign.  That is because there is no such case.  The relief the defendants seek is

4    unprecedented, and none of the defendants' challenges to the prosequendum writs in this case has ever

5    been accepted.  This Court should deny the motion.

6    **A.    The Defendants Lack Standing.**

7    Since *Ponzi v. Fessenden*, 258 U.S. 254 (1922), the courts have said, again and again, that the

8    question of who maintains custody of a prisoner is a matter of comity between the sovereigns and is not

9    an issue about which a prisoner can complain.  *Id.* at 260 ("[A prisoner] may not complain if one

10   sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the

11   other may also subject him to conviction of crime against it.").[1]  The defendants argue that these

12   authorities are inapplicable because they address whether a prisoner has "a constitutional right,

13   cognizable on habeas review, to be returned from one sovereign to another," whereas the issue here is

14   whether "this Court lacked jurisdiction to issue an order in the pending case to which they are parties."

15   ECF No. 233 ("Reply Br.") at 1.

16   The sole case cited by the defendants (which is itself a habeas case), *Moody v. Holman*, 887 F.3d

17   1281 (11th Cir. 2018), says that whether an inmate may challenge a sovereign's claim of primary

18   jurisdiction is not technically an issue of "standing" but is better understood as a lack of "cause of

19   action."  *Moody*, 887 F.3d at 1286.  But this is beside the point because, as the government pointed out

20   in its opposition, even outlier cases such as *Moody* uniformly say that, while the issue may not be one of

21   standing, a prisoner still has no legal basis to challenge his transfer from the custody of one sovereign to

22   another.  *Moody*, 887 F.3d at 1292 ("[T]he United States does not object to Alabama retaining custody

23

24

25   [1] *See also Poland v. Stewart*, 117 F.3d 1094, 1098 (9th Cir. 1997) ("Whether or not the issue is
     analyzed as one of standing, it is clear that Poland's contention has no merit."); *Derengowski v. United*
26   *States*, 377 F.2d 223, 223 (8th Cir. 1967) ("It is a well-established legal rule that a state prisoner is
     without standing to contest a federal court's issuance of a writ of habeas corpus ad prosequendum.");
27   *Brown v. Perrill*, 28 F.3d 1073, 1075 (10th Cir. 1994) (citing *Hernandez v. United States Attorney*
     *General*, 689 F.2d 915, 918–19 (10th Cir. 1982) (noting, "the writ of habeas corpus ad prosequendum is
28   a matter of comity . . . a prisoner may not object to its use."); ECF No. 215 ("Opp'n Br.") at 7
     (collecting additional cases).

1   of Mr. Moody . . . [and] Mr. Moody does not have a cognizable right to demand otherwise."). Thus,

2   even if the defendants were right about the standing issue, they still would not be entitled to any relief.

3   But to be clear, the defendants do not have standing. Most courts have held that prisoners lack

4   standing to challenge a prosequendum writ, and those courts have the better argument. The Third

5   Circuit explained the relevant principles in *Bowman v. Wilson*, 672 F.2d 1145 (3d Cir. 1982), and while

6   the standing doctrine has evolved in recent years, the analysis applied in *Bowman* has not materially

7   changed. As the Third Circuit pointed out, a prisoner challenging his custody status lacks standing for

8   the simple reason that he has not suffered a legally cognizable injury. *Id*. at 1154–55. No law or

9   constitutional doctrine protects a prisoner's desire to be housed by one sovereign rather than the other.

10  *See Ponzi*, 258 U.S. at 264 ("The penitentiary is not a place of sanctuary"); *United States ex rel.*

11  *Spellman v. Murphy*, 217 F. 2d 247, 251 (7th Cir. 1954) ("A prisoner has no standing to choose between

12  two sovereignties each desiring his custody. He does not have a choice of keepers."); *see also Moody v.*

13  *Daggett*, 429 U.S. 78, 88 n. 9 (1976) (prisoner has no constitutional right to be incarcerated in a

14  particular prison); *Stuart v. U.S. Marshalls*, No. 3:06 CV 2115, 2006 WL 2945622, at *1–2 (N.D. Ohio

15  Oct. 13, 2006) (defendant had "no justifiable expectation that he will be incarcerated in any particular

16  prison within a State, or any justifiable expectation that he will be incarcerated in any particular State.").

17  The sovereign who has lost custody has a legal interest protected by law and thus may object to a writ

18  (*see United States v. Pleau*, 680 F.3d 1 (1st Cir. 2012) (granting intervention to state governor who

19  opposed prosequendum writ)), but the prisoner himself is not "the proper person to press the claim."

20  *Bowman*, 672 F.2d at 1151 n. 10, 1154–55.

21  The same is true here. The defendants have no legal right to demand that the state take them

22  back, and they therefore have no injury recognized by law. Their argument accordingly fails at the first

23  step of the standing analysis, which requires an "injury in fact." The defendants attempt to sidestep this

24  requirement by claiming that they have been injured by being housed at Atwater, which is a greater

25  distance from their counsel, in violation of their Sixth Amendment rights. Reply Br. at 2. But most of

26  the defendants are not, in fact, any farther from their counsel, as the government explained in its

27  opposition. Opp'n Br. at 1–2. And even if they were, that is not a violation of their Sixth Amendment

28

1    right to counsel or any other legal right.  *United States v. Lucas*, 873 F.2d 1279, 1280 (9th Cir. 1989)

2    ("Lucas's counsel could easily endure the inconvenience of a two-hour drive to Phoenix.").

3            In making this point, the government is not conflating a failure on the merits with standing;

4    instead, it is pointing out that a defendant cannot manufacture standing by invoking some theoretical

5    injury for which there is no legal protection.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("[A]n

6    inmate cannot establish relevant actual injury [for purposes of standing] simply by establishing that his

7    prison's law library or legal assistance program is subpar in some theoretical sense.").  "It is not enough

8    to establish standing that an identifiable interest has been injured."  Wright & Miller, Injury in Fact, 13A

9    Fed. Prac. & Proc. Juris. § 3531.4 (3d ed.).  That interest must also be legally cognizable, and here it is

10   not: the defendants have no cognizable right to force their return to the physical custody of the state

11   sovereign, whether in the context of a habeas proceeding or a "facial" challenge to the writ.  *See Grier v.*

12   *Purdue*, No. 5:13CV110, 2014 WL 3823999, at *3 (N.D.W. Va. Aug. 4, 2014) (noting that even if the

13   Commonwealth of Pennsylvania borrowed the defendant "without the benefit of a writ of ad

14   prosequendum," he "has not suffered a violation of any constitutionally protected right based on the

15   failure to obtain the writ.") (citing *United States v. Harden*, 45 F. App'x 237, 239 (4th Cir. 2002)

16   (unpublished) (finding that prisoners have no standing to challenge transfers between sovereigns or the

17   issuance of a writ of habeas corpus ad prosequendum and, therefore, there was no constitutional error

18   based on an alleged defective writ)); *see also United States v. Pleau*, No. 10–184–1 S, 2011 WL

19   2605301, at *2 (D.R.I. June 30, 2011) ("[I]t is axiomatic that state prisoner is without standing to contest

20   a federal court's issuance of a writ of habeas corpus ad prosequendum"), *stay of writ vacated*, 680 F.3d

21   1 (noting, "we need not wander into the thicket of Pleau's own debatable standing to appeal from a writ

22   merely commanding his presence to answer criminal charges" where appeal of writ could proceed based

23   on intervention by state governor).

24           For a related reason, the defendants' motion also fails the prudential limitation on standing called

25   the "zone of interests" test, which requires that a party who invokes a statutory or constitutional

26   protection must be within the zone of interests it was intended to protect.  *Lexmark In'l, Inc. v. Static*

27   *Control Components, Inc.*, 572 U.S. 118, 130 (2014).  As every case to consider this issue has

28   concluded, the defendants here are outside the "zone of interest" of the rule of comity between

1  sovereigns that they seek to invoke. *Bowman*, 672 F.2d at 1155; *Rawls v. United States*, 166 F. 2d 532,

2  534 (10th Cir. 1948) ("[T]he rule of comity confers no rights upon a defendant which he would not have

3  in the absence of such rule."). In *Bowman*, for example, the defendant challenged his transfer from the

4  custody of the District of Columbia to military confinement, where, he claimed, he was receiving

5  inadequate mental health treatment. *Bowman*, 672 F.2d at 1155. The Third Circuit observed that

6  although this allegedly inadequate treatment might furnish the basis for a claim by the prisoner against

7  the military, "that injury does not place him within the zone of interest of the rule of comity he must

8  invoke in order to challenge his custody by the military in derogation of the authority of the District of

9  Columbia. The beneficiary of that rule is not Bowman but the competing jurisdiction in a federal system

10  of government." *Id*. Thus, because the defendants have not suffered any legal injury—and certainly

11  none protected by the rules governing prosequendum writs—they lack standing to make this motion.

12          **B.      The Prosequendum Writs in this Case Were Properly Authorized.**

13          Assuming arguendo the defendants have standing to challenge the writs, their arguments fail on

14  the merits in any event. Both the defendants' merits contentions are addressed below.

15          **1.      There Are No Time Limits on Prosequendum Writs.**

16          The defense first argues that the writs in this case are "void" because they permit "indefinite

17  pretrial detention outside of the court." *See* ECF No. 198 ("Mot.") at 3 (challenging the "indeterminate

18  period of pretrial detention" effected by the writs); Reply Br. at 5 (arguing that prosequendum writs may

19  not be used for "indefinite pretrial detention outside of the courtroom."). According to the defendants,

20  prosequendum writs are to be used only to bring prisoners directly from state custody into a federal

21  courtroom, and any form of federal detention outside of "the court" during the pendency of the federal

22  case runs afoul of section 2241(c)(5). Reply Br. at 6–7. The defendants have identified no court

23  anywhere that has ever held this, and nationwide authority holds that this is not true, including because

24  of the serious logistical issues any such rule would present.

25          The purpose of the prosequendum writ is to bring a prisoner into federal custody to allow for his

26  prosecution by federal authorities. *Carbo v. United States*, 364 U.S. 611, 614 (1961). That is, the writ is

27  a procedural means of getting an already imprisoned defendant—who would otherwise be in default—

28  before the court, and it allows a state inmate to be kept in temporary federal custody for the duration of

his federal case while still accruing time on his state sentence. *See United States v. Brown*, 875 F.3d 1235 (9th Cir. 2017) (holding that when a state prisoner is transferred to a federal detention facility pursuant to a writ of habeas corpus ad prosequendum he is considered on loan to the federal authorities so that the sending state's jurisdiction over the accused continues uninterrupted); *Johnson v. Gill*, 883 F.3d 756, 762 (9th Cir. 2018) (favorably discussing *Zerbst v. McPike*, 97 F.2d 253 (5th Cir. 1938), noting: "Louisiana state authorities had primary jurisdiction over a defendant, but transferred him to the federal government *for the duration of a federal prosecution* . . . When the federal sentencing was complete, the prisoner was returned to the state") (emphasis added)); *Easley v. Stepp*, 5 F. App'x 541, 543 (7th Cir. 2001) (unpublished) (noting, when defendant "was moved to the federal facility, he was still serving his state sentence and receiving state credit for that time"); *Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir. 1980) ("[I]f a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody *at the completion of the federal proceedings* or the federal sentence if the federal government wishes to execute it immediately." (emphasis added)).

Some courts have described this is a "temporary" transfer, but the defendants do not (and cannot) cite to any authority restricting the use of such writs to specific time periods, and the Ninth Circuit has recognized that there is no such restriction. *See Poland*, 117 F.3d at 1097 ("*Ponzi* . . . held that the Attorney General could yield custody of a federal prisoner for purposes of trial in a state court. It by no means implied that the Attorney General's authority was limited to a short release for trial."). As the case law amply demonstrates, a "temporary" transfer, brief or otherwise, is one whereby a prisoner merely is "on loan" from the primary sovereign to the receiving sovereign, to be returned at the conclusion of the receiving sovereign's proceedings. *See United States v. Londono*, 285 F.3d 348, 356 (5th Cir. 2002) ("[T]he writ of habeas corpus ad prosequendum pursuant to which [the defendant] was brought to the district court expressly required that he be returned to state custody *after the federal proceedings were completed*.") (emphasis added)); *cf. Huffman v. Perez*, 230 F.3d 1358 (6th Cir. 2000) (unpublished) (rejecting defendant's argument that he was entitled to credit against his federal sentence for a period of 26-1/2 months when he was in the custody of the North Carolina Department of Corrections and secondarily in the custody of the Marshals pursuant to an ad prosequendum writ,

1   stating: "the length of time Huffman spent on the federal writ of habeas corpus ad prosequendum does

2   not require a departure from the general rule prohibiting credit on a federal sentence for time spent

3   serving a state sentence."); *Taccetta v. Fed. Bureau of Prisons*, 606 F. App'x 661, 664 (3d Cir. 2015)

4   (unpublished) ("[W]e have held that the length of time in federal detention is irrelevant to the question

5   of relinquishment [of primary custody by the state]") (internal quotations omitted)).

6      Any such loan is by its very nature temporary, but it also may vary in length, and there is an

7   abundance of authority recognizing that prosequendum writs may in fact be used to keep an inmate in

8   federal custody through sentencing.  *See* Opp'n Br. at 6 (citing authorities); *see also Wise v. Stansberry*,

9   No. 2:10CV605, 2011 WL 6960815, at *8 (E.D. Va. Dec. 22, 2011) (concluding that prisoner obtained

10  by writ of habeas corpus ad prosequendum was in the temporary custody of federal authorities for the

11  more than two-year period from November 21, 2003, to March 12, 2006, while being prosecuted on

12  federal charges in a Texas federal court); *Settle v. Cozza-Rhodes*, Civ. No. 15-00464, 2015 WL

13  7301694, *4 (D. Colo. October 23, 2015) (concluding that prisoner obtained by writ of habeas corpus ad

14  prosequendum was in the temporary custody of federal authorities for the nearly three years that he was

15  detained pursuant to the writ); *Garcia v. Rivas*, No. 15-CV-377 MCA/SCY, 2016 WL 10538197, at *6

16  (D.N.M. Mar. 11, 2016) ("Recent decisions have further affirmed the general rule that a prisoner

17  obtained by a writ of habeas corpus ad prosequendum is considered to be in the temporary custody of

18  the receiving sovereign regardless of the extent of time the prisoner is detained under the writ").

19     The government does not dispute that prosequendum writs also may be authorized for more

20  limited periods of time, but there is nothing requiring the government to repeatedly obtain a writ for

21  every court appearance, and the defendants' interpretation of the statutory language requiring as much

22  simply goes too far.  *See, e.g., Jones v. Lilly*, 37 F.3d 964, 968 (3d Cir. 1994) (explaining, in the context

23  of the All Writs Act, that "the term 'necessary' does not have to be interpreted in a narrow or rigorous

24  manner. Rather, a court may . . . issue a writ where helpful 'to achieve the ends of justice entrusted to

25  it.'") (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942)).  The defendants'

26  interpretation of the statute also ignores the impracticality of "writting" multiple prisoners from multiple

27  facilities for multiple federal hearings and court appearances.  The government has explained the

28  difficulty associated with housing the defendants in various facilities scattered throughout the state.

SURREPLY RE: MOTION TO QUASH WRITS          6
CR 21-00328 YGR

1  Declaration of Marc Harwell ¶ 6 (ECF No. 214-1). The logistical challenges and officer safety issues

2  are significant even when the defendants are all under federal control. *Id*. Those challenges would be

3  compounded if the various defendants were left in the custody of several different state wardens, each

4  with his own ideas about where they should be housed and how they should be made available. For

5  example, state authorities could transfer any one of these defendants to a facility on the Oregon or

6  Mexican border, without consultation with federal authorities, creating obstacles not only for their court

7  appearances but also for their consultation with their counsel in these ongoing proceedings.

8        For all these reasons, the transfer to federal custody was (and remains) "necessary," but again,

9  whether that is true in any given case is an issue to be resolved by the two sovereigns. It is not an issue

10  to be litigated by the prisoner, who, as case after case has held, "may not complain" if the state agrees to

11  surrender its exclusive control over him. *Ponzi*, 258 U.S. at 260; *Stamphill v. Johnston*, 136 F.2d 291,

12  292 (9th Cir. 1943) ("[T]he arrangement made between the two sovereigns, the state and federal

13  governments, does not concern the defendant who has violated the laws of each sovereignty and he

14  cannot in his own right demand priority for the judgment of either.").

15        **2.**    **Magistrate Judges May Issue Prosequendum Writs.**

16        The defendants also argue that the writs are "fatally flawed" because they were signed by a

17  magistrate judge and "Congress used jurisdiction-stripping language [in section 2241] to limit the

18  issuance of writs of habeas corpus to Article III judges." Reply Br. at 6. But magistrate judges routinely

19  issue prosequendum writs pursuant to the authority delegated to them under the Federal Magistrate's

20  Act, codified at Title 18, United States Code, Section 631 *et seq.*, as often supplemented by local rules

21  of court. *See United States v. Collins*, No. 03 95CR 00035LRH RAM, 2007 WL 1959258, at *1 (D.

22  Nev. July 5, 2007) (rejecting defendant's argument that the judgment against him was void and stating:

23  "The United States is correct that a magistrate judge has the authority to issue an arrest warrant . . .

24  detention orders . . . and a writ of habeas corpus ad prosequendum") (citing *United States v. Mauro*, 436

25  U.S. 340, 362 (1978)); *Lindsay v. United States*, No. CV 16-3281 (SDW), 2016 WL 3457157, at *2

26  (D.N.J. June 24, 2016) (rejecting and calling "dubious" defendant's argument that the district court

27  lacked jurisdiction to sentence him based on his questioning of a magistrate judge's authority to issue a

28  writ of habeas corpus ad prosequendum); *see also United States v. Minero-Rojas*, No. 11CR3253-BTM,

SURREPLY RE: MOTION TO QUASH WRITS    7
CR 21-00328 YGR

1  2011 WL 5295220, at *12 (S.D. Cal. Nov. 3, 2011) (ruling that "magistrate judges have express

2  authority to issue writs of habeas corpus ad prosequendum" and citing local rule); *King v. Thornburg*,

3  762 F. Supp. 336, 342 (S.D. Ga. 1991) (same); *United States v. Peterson*, No. 1:07CR130, 2008 WL

4  11352650, at *2 (S.D. Ohio Apr. 4, 2008), *aff'd*, 411 F. App'x 857 (6th Cir. 2011) (noting post-

5  indictment issuance of an ad prosequendum writ by magistrate judge); *In re Wilson*, 153 F. Supp. 2d

6  1013, 1017 (E.D. Ark. 2001) ("A Magistrate Judge may issue subpoenas, writs of habeas corpus ad

7  testificandum or ad prosequendum or other orders necessary to obtain the presence of parties or

8  witnesses or evidence needed for court proceedings, either civil or criminal" citing local rules and §

9  636(a)(1)); *United States v. Roper*, 716 F.2d 611, 612 (4th Cir. 1983) (noting that after the defendant

10  "did not appear for [an] initial arraignment . . . the government requested a magistrate to issue a writ of

11  habeas corpus ad prosequendum"); *United States v. Jones*, 581 F.2d 816, 820 (10th Cir. 1978) (citing

12  local rule in the Western District of Oklahoma authorizing magistrate judges to "[i]ssue subpoenas, writs

13  of habeas corpus ad testificandum or habeas corpus ad prosequendum, or other orders necessary to

14  obtain the presence of parties or witnesses or evidence needed for court proceedings").

15       Under the Federal Magistrates Act, magistrates have broad authority to carry out the

16  responsibilities of the federal courts.  That includes, according to section 636(b)(1)(a), the power "to

17  hear and determine any pretrial matter pending before the court."  18 U.S.C. § 636(b)(1)(a).  Consistent

18  with section 636, the Criminal Local Rules in this district and the Federal Rules of Criminal Procedure

19  delegate to magistrates wide-ranging powers regarding the transfer and detention of defendants

20  pretrial—including the ability to issue arrest warrants and summonses—to obtain the presence of a

21  defendant.  *See* N.D. Cal. Local Crim. R. 7-1(b)(13) (giving magistrates the power to "conduct

22  proceedings for extradition"); N.D. Cal. Local Crim. R. 7-1(b)(6) (authorizing magistrates to "hear and

23  determine motions or matters regarding release or detention"); N.D. Cal. Local Crim. R. 46-1

24  (delegating motions to release or detain to magistrate judges, with the collateral duty of ensuring a

25  defendant's continued appearance before the courts); *see also* Fed. R. Crim. P. 4, 4-1 (authorizing

26  magistrates to issue arrest warrants and summons).  Given that magistrate judges have the authority to

27  conduct extradition proceedings (a prototypical exercise of the removal of a person from one sovereign

28  to another for purposes of prosecution); to issue arrest warrants and summonses; and to order a

1   defendant detained for the duration of his trial, they must also have the related authority to ensure that a

2   defendant who is already in custody appears before the Court.  The local and procedural rules name the

3   most common means of accomplishing this, but not to the exclusion of all other methods.[2]

4        Moreover, because of the wide-ranging authority granted to magistrates over pretrial matters,

5   including the power to order the arrest and detention of a defendant, the government had authority to

6   take and retain custody of these defendants, even without prosequendum writs.  Arrest warrants were

7   issued for all the defendants, and they all then waived findings on pretrial detention and were remanded

8   into federal custody.  ECF Nos. 111–130; *see Knox v. Pearson*, No. 5:10CV193-DCB-RHW, 2012 WL

9   2912737, at *2 (S.D. Miss. Apr. 3, 2012) ("The undersigned sees no inconsistency in federal authorities

10  executing both an arrest warrant (directed against Knox) and securing a writ of habeas corpus ad

11  prosequendum (directing the state to surrender custody of Knox to federal authorities).").  Under these

12  circumstances, even if this Court were to quash the prosequendum writs, the federal government would

13  have no obligation to release the defendants, at least in the absence of a demand by state authorities.

14  Thus, the defendants are, at best, alleging a violation with no practical consequences, particularly given

15  that this Court could simply issue an order nunc pro tunc either providing the magistrate with the

16  authority to issue the writs, or issuing them itself.  *See, e.g.*, *Lugo v. Hudson*, 785 F.3d 852, 855 (2d Cir.

17  2015) (technical deficiency with execution of prosequendum  writ did not invalidate it).

18       **C.    The Transfer of a Prisoner from State to Federal Custody Is Not a "Seizure."**

19       The defendants argue that they were unlawfully "seized" in violation of the Fourth Amendment

20  when they were transferred from state to federal custody.  Reply Br. at 6–8.  They have cited no

21  _____

22       [2] Another source of authority for magistrates to issue prosequendum writs appears in section
636(a)(1), which grants magistrates all powers historically exercised by "United States commissioners."

23  28 U.S.C. § 636(a)(1).  United States Commissioners were court officials who, before their abolition in
1968 as part of the Federal Magistrates Act, exercised many of the same powers as today's magistrates.

24  *See A Guide to the Legislative History of the Federal Magistrate Judges System*, Admin. Office of the
United States Courts, at 1-15 (Sept. 2009).  Section 636(a)(1) was included in the statute to preserve the

25  historic powers and duties of commissioners.  According to the Manual for United States
Commissioners published in 1948, they had broad authority to order a defendant to be placed into the

26  custody of the United States Marshal and to order the Marshal to transfer the defendant into the district
where the trial would be held.  Manual for United States Commissioners (Rev. 1948) at 18–19.  The

27  Commissioner's Manual further explained that the Marshals would maintain "a list of the approved
places of confinement within the district" and, once the prisoner was brought into the district, they were

28  granted "discretion to use the one best suited for the detention of the defendant."  *Id.*

SURREPLY RE: MOTION TO QUASH WRITS        9
CR 21-00328 YGR

1  authority for this argument, and the Ninth Circuit called this argument "frivolous" when it was raised

2  previously by a *pro se* litigant.  *Rizzo v. Dawson*, 778 F.2d 527, 529 (9th Cir. 1985).

3        The defendants in this case were seized when they were first arrested and incarcerated.  "Once an

4  individual has been lawfully taken into custody, he has been seized for purposes of the Fourth

5  Amendment; merely transferring custody of that individual from one law enforcement agency to another

6  deprives him of nothing he has not already lost."  *United States ex rel. Vanorsby v. Acevedo*, No. 11-

7  7384, 2012 WL 3686787, at *5 (N.D. Ill. Aug. 24, 2012); s*ee also United States v. Laville*, 480 F.3d

8  187, 196 (3d Cir. 2007) (transfer of custody from local to federal officials was not a "new arrest" and

9  therefore federal authorities were not required to have probable cause); *Garcia-Garcia v. City of New*

10  *York*, No. 12-cv-1302, 2013 WL 3832730, at *4 (S.D.N.Y. July 22, 2013) ("[A]n inmate cannot be

11  illegally seized while he is lawfully incarcerated, because the incarceration itself is the only

12  relevant seizure for the purposes of the Fourth Amendment."); *A.M. ex rel. Youngers v. New Mexico*

13  *Dep't of Health*, 117 F. Supp. 3d 1220, 1262–63 (D.N.M. 2015) ("Although courts have held that

14  prisoners have a Fourth Amendment right to be free from unlawful searches, no court has held that they

15  have a right to be free from unlawful seizures."); *Harris v. Bowser*, 369 F. Supp. 3d 93, 102 (D.D.C.

16  2019) (rejecting claim that inmate was "seized" when he was transported to another facility by "an

17  entirely separate authority").  Because the defendants were already lawfully in custody, they were not

18  "seized" for purposes of the Fourth Amendment when they were transferred to federal custody, and the

19  defendants' Fourth Amendment claim therefore is baseless.

20        For the foregoing reasons, this Court should deny the motion to quash.

21  DATED:  February 28, 2022                                  Respectfully submitted,

22                                                                              STEPHANIE M. HINDS

23                                                                              United States Attorney

24                                                                              _____/s/_____

25                                                                              ERIN A. CORNELL
                                                                                MARJA-LIISA OVERBECK

26                                                                              KEVIN R. RUBINO
                                                                                Assistant United States Attorneys

27

28